# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES OWENS, Inmate #K83253, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROD BLAGOJEVICH, ROGER | ) | |
| WALKER, RONALD MEEKS, CHARLES | ) | CIVIL NO. 06-380-DRH |
| HINSLEY, DR. FAISAL AHMED, PAM | ) | |
| GRUBMAN, LT. WALLER, SGT. | ) | |
| McDANIEL, BOB HOFFMAN, C/O | ) | |
| ANDERSON, C/O BRADLEY, C/O | ) | |
| JOHNSON, C/O NEEPER, C/O SMITH, | ) | |
| UNKNOWN PARTIES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff, a former inmate in the Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are legally frivolous and thus subject to summary dismissal.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.  The Court notes that the following designated counts are based upon, but differ slightly, from those detailed by Plaintiff in the complaint.

COUNT 1:     Against unspecified defendants for denying and ignoring his grievances, in violation of Illinois law, the First Amendment, and the Fourteenth Amendment right to due process.

COUNT 2:     Against unspecified defendants for denying his First Amendment rights in force-feeding him to end his hunger strike.

COUNT 3:     Against Defendants Bradley, Waller, McDaniel, Hinsley, Hoffman, Grubman, Blagojevich, Walker, and Meeks for deliberate indifference to his serious medical needs during a hunger strike.

COUNT 4:     Against Defendants Waller, Anderson, Neeper, and Smith for failing to protect him from assault by a fellow inmate.

COUNT 5:     Against unspecified defendants for unconstitutional retaliation against him for filing grievances and lawsuits.

COUNT 6:     Against unspecified defendants for deliberate indifference to his dental needs.

COUNT 7:     Against unspecified defendant for denying him proper hygiene supplies, for unsafe conditions of confinement, for denying yard time, for denying inmates the ability to shave, and for providing inadequate clothing.

## COUNT 1

Plaintiff states that unspecified Illinois Department of Corrections ("IDOC") officials routinely violate their own policies regarding inmate grievances by refusing to process them and ignoring the issues raised therein, in violation of Illinois statute, the First Amendment, and the Due Process clause of the Fourteenth Amendment.

First, section 1983 is a vehicle for addressing violations of rights guaranteed by the constitution or other federal law by state actors, *see West v. Atkins*, 487 U.S. 42, 49 (1988), not for enforcing state law, *see Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). "The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension." *Vruno v. Schwarzwalder*, 600 F.2d 124, 130-31 (8th Cir. 1979) (citations omitted). Therefore, Plaintiff has failed to state a claim of constitutional dimension regarding any potential violations of state law. The Court expresses no opinion as to the merits of such a claim if it were raised in state court.

Second, Plaintiff has not demonstrated any violations of his right under the First Amendment to petition the government for a redress of his grievances. Indeed, the fact that Plaintiff filed this lawsuit belies any assertion that his First Amendment right to access the courts for redress of grievances has been denied by the defendants' failure to comply with their own grievance procedures. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

Finally, a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Id.* The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982).

Based on these legal standards, Plaintiff has failed to state a claim based on the defendants' improper handling of his grievances.  Count 1 is therefore **DISMISSED** from the action with prejudice.  *See* 28 U.S.C. § 1915A.

## COUNT 2

After Plaintiff's grievances were ignored, he began a lengthy hunger strike in an attempt to coerce IDOC officials into addressing the issues raised in his grievances.  Plaintiff claims that by obtaining a state court order to force feed him, causing an end to his hunger strike, IDOC officials violated his First Amendment right of peaceful demonstration.

The Court is not aware of any specific guarantee under the First Amendment that protects inmate hunger strikes.  The Seventh Circuit has frowned upon inmate coercive tactics like hunger strikes.  *See Freeman v. Berge*, 441 F.3d 543, 546 (7th Cir. 2006) ("[a] prison cannot be forced by such tactics to change an otherwise reasonable rule").  Illinois Courts have gone further to specifically hold that the IDOC does not violate an inmate's constitutional rights in seeking a court order to force feed an inmate on a hunger strike.  *See People ex rel. Illinois Dept. of Corrections v. Millard*, 782 N.E.2d 966, 969 (Ill. App. Ct. 2003).  As stated by the Illinois Court of Appeals,

> Defendant was not on a hunger strike as a means of demonstrating on behalf of some political cause or religious belief. His "cause," as is most commonly the case in hunger strike situations in prison, was to manipulate the system, to gain the attention of prison officials with the hope of making his confinement easier. We do not condone such manipulative behavior in our prison system. At the same time, however, we respect an individual's right to privacy and the right to control one's own body. *See Thor v. Superior Court*, 5 Cal.4th 725, 734-38, 855 P.2d 375, 380-83, 21 Cal.Rptr.2d 357, 362-65 (1993) (a person's interest in personal autonomy and self-determination is a fundamentally commanding one, with well-established legal and philosophical underpinnings). While in the Department's custody, however, an inmate's right to privacy must be balanced against the Department's interest in maintaining an orderly and disciplined institution. Because the Department's interest in prison administration is the controlling factor here, we hold that the Department may force-feed a hunger-striking inmate, whose only purpose is to attempt to

> manipulate the system so as to avoid disruptive or otherwise detrimental effects to
> the orderly administration of our prison system.

*Id.* at 972.  The Seventh Circuit has agreed that a prison cannot allow a prisoner to starve himself

to the point of causing great bodily harm, and that at some point the prison may be required to force

feed a prisoner "to prevent him from seriously endangering his health." *Freeman*, 441 F.3d at 546.

Based on these legal standards, Plaintiff has failed to state a claim that his First Amendment

rights were violated when IDOC officials force fed him to end his hunger strike.  Accordingly,

Count 2 is **DISMISSE**D from the action with prejudice.  *See* 28 U.S.C. § 1915A.

### COUNT 3

Plaintiff states that he informed Defendants Bradley, Waller, McDaniel, and Hinsley in

person and in grievances, and Defendant Blagojevich by letter in April 2004 that he was on a hunger

strike, but none of those defendants informed prison health care personnel.  As a result, Plaintiff was

left in his cell for 21 days without receiving any medical treatment to ascertain his condition until

family members (whom he had informed by letter of his hunger strike) contacted the prison.  After

finally being force fed by medical personnel in May 2004, Plaintiff renewed the strike in June 2004

when certain of his demands still had not been met.  Plaintiff states that despite their knowledge of

his renewed hunger strike, Defendants Bradley, McDaniel, Waller, Grubman, Hoffman, Walker,

Meeks, Blagojevich, and an unnamed cellhouse major left him in his cell for 28 days without

medical treatment.

Plaintiff's claims in Counts 2 and 3 are contradictory, and place the prison in an

administrative bind.  On the one hand, Plaintiff claims that his right to "peaceful demonstration" in

the form of a hunger strike should be unfettered and further, to forcefully end the hunger strike

without Plaintiff's consent violates the constitution.  On the other hand, Plaintiff claims that the

prison should be required to protect him and provide him medical treatment during his hunger strike. The Seventh Circuit has commented on this type of claim.

> A prisoner cannot force the prison to change its rules by going on a hunger strike and blaming the prison for his resulting loss of weight. *Talib v. Gilley*, 138 F.3d 211 (5th Cir.1998). He cannot, in short, be permitted to engineer an Eighth Amendment violation. *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir.2001).

*Rodriguez v. Briley*, 403 F.3d 952, 953 (7ᵗʰ Cir. 2005).

Despite the Seventh Circuit's clear distaste for this type of claim, the Court is struck by the length of time Plaintiff alleges he was left without medical treatment during his hunger strike, first, for 21 days then later for 28 days. If these statements are true, and at this point in the litigation the Court must assume they are, then this lack of treatment despite defendants' knowledge of the lengthy hunger strike could constitute deliberate indifference to Plaintiff's serious medical needs.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7ᵗʰ Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7ᵗʰ Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at —, 114 S.Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as

"deliberate indifference." *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

> Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health – that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.), *cert. denied,* 516 U.S. 993 (1995); *see also Steele*, 82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough

- 7 -

proof under *Farmer*); *Miller v. Neathery*, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction).  However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur.  *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

Based on these legal standards, the Court cannot dismiss this claim at this point in the litigation.

A word about Defendants Blagojevich, Walker, and Meeks is in order, however.  To be held individually liable under section 1983, a defendant must be 'personally responsible for the deprivation of a constitutional right.' "  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001), *quoting  Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).  A high-level state official is not responsible for constitutional deprivations against specific inmates solely because a letter or the grievance procedure made him aware of a constitutional violation and he failed to intervene.  *See Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir. 1982).  To be held liable, a defendant must have known about the unconstitutional conduct and facilitated, approved, condoned, or turned a blind eye to it.  *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).  Plaintiff has not made allegations that indicate Defendants Rod Blagojevich, the Governor of Illinois, Roger Walker, the Director of the IDOC, or Ronald Meeks, Deputy Director of the IDOC, were personally responsible for failing to provide Plaintiff with medical treatment during his hunger strike.  Accordingly, these individuals are **DISMISSED** as defendants from Count 3.  Plaintiff may proceed on Count 3 of the complaint against Defendants Bradley, Waller, McDaniel, Hinsley, Hoffman, and Grubman.

## COUNT 4

Plaintiff states that in January 2005, Defendant Waller refused to place him in protective

custody after Plaintiff informed him he was being threatened by other inmates and that his glasses had been stolen. In February 2005, Defendants Anderson, Neeper, and another unnamed corrections officer refused to remove him from his cell after his cellmate, Gordon, assaulted him and stated that he was going to assault Plaintiff again.

On February 24, 2005, another inmate, Auton, who claimed to have been transferred from Shawnee Correctional Center for assaulting his cellmate, was placed in the Plaintiff's cell. On March 27, 2005, Auton's psychiatric medications were stopped and he began threatening Plaintiff. Plaintiff informed Defendant Smith of the threats, but Smith told him nothing could be done that day. Shortly thereafter, Auton assaulted Plaintiff. Plaintiff proceeded to flood the cell to get Defendant Smith's attention, but Defendant Smith just shut off the water to the cell and went home for the day. C/O Bryan (not a defendant) refused to remove Plaintiff from the cell, and later Auton assaulted Plaintiff again, causing lumps and bruises on his head and back, and requiring a trip to the health care unit.

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Luttrell v. Nickel,* 129 F.3d 933, 935 (7th Cir. 1997). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.; Reed v. McBride,* 178 F.3d 849, 852 (7th Cir. 1999). A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by

- 9 -

showing that he complained to prison officials about a *specific* threat to his safety.  *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996).  In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action.  *Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001).

Based on Plaintiff's allegations and the legal standards stated above, the Court cannot dismiss Count 4 at this point in the litigation.  Plaintiff may proceed on Count 4 against Defendants Waller, Anderson, Neeper, and Smith.

## COUNT 5

Plaintiff states that unspecified defendants retaliated against him for filing grievances and conducting "peaceful demonstration[s]" in the following ways.  First, these unspecified defendants have continually placed Plaintiff in cells with highly aggressive inmates and smokers despite his own low aggression and non-smoking status.   Second, they denied Plaintiff correspondence materials and legal papers while in the health care unit on a hunger strike, despite a court deadline.  Third, they denied Plaintiff basic hygiene products while housed in the health care unit and placed him in a cell with no water or toilet for over 24 hours.   Fourth, they improperly obtained an injunction against Plaintiff using knowingly false allegations.  Fifth, unspecified medical staff force fed Plaintiff by placing a tube down his nose without using any anesthetic and causing him pain. Finally, unspecified IDOC officials and Defendant Blagojevich left the Plaintiff in his cell for 49 days without medical treatment during a hunger strike.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th

Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Based on these legal standards, Plaintiff has stated facts that may constitute improper retaliation by IDOC employees and officials. However, Plaintiff's claim here fails because he has not named any defendants personally responsible for retaliating against him.

The reason that Plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe their complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint.  *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) (a "short and plain" statement of the claim suffices under Fed. R. Civ. P. 8 if it notifies the defendant of the principal events upon which the claims are based); *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) ("notice pleading requires the plaintiff to allege just enough to put the defendant on notice of facts providing a right to recovery"). Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").  Plaintiff does state that Governor Blagojevich knew he was not receiving medical treatment but failed to take any action upon this knowledge.  This statement is insufficient to bring Governor Blagojevich in as a defendant because he cannot show that Defendant Blagojevich was personally responsible for denying him treatment as is required in a section 1983 action, s*ee Crowder,* 687 F.2d at 1006 (director of state correctional agency not personally responsible for constitutional violations within

- 11 -

prison system solely because grievance procedure made him aware of it and he failed to intervene),
or that Defendant Blagojevich knew about the conduct and facilitated, approved, condoned, or
turned a blind eye to it, *see Jones*, 856 F.2d at 992.  Accordingly, Plaintiff has failed to show how
any named defendants retaliated against him; Count 5 must be **DISMISSED** from the action without
prejudice.

**COUNT 6**

Plaintiff states that prior to his arrival at Menard Correctional Center, he suffered from
periodontal disease for which he was prescribed a dental rinse and deep cleaning dental treatments.
At Menard, he was denied any treatment for his periodontal disease, resulting in the loss of three
teeth  and continued infection with pain and bleeding gums.

One of Plaintiff's front teeth was extracted while he was housed at Joliet Correctional Center
and a "partial plate" was ordered, but after he was transferred to Menard, dental staff told Plaintiff
they would not give him the plate and only offered to pull all of his teeth and fit him with dentures.
Plaintiff refused to have all of his teeth extracted.  After a total of three years, and a 70-day hunger
strike, he received the partial plate.

Prior to his arrival at Menard, a dentist at Sheridan Correctional Center told Plaintiff that his
problem teeth could be saved if old fillings were replaced and one decayed tooth was filled.  The
dental staff at Menard refused to give Plaintiff any fillings.  Two years later when the tooth became
infected, unspecified dental personnel extracted it.  Plaintiff contends that the tooth could have been
saved had Menard staff timely filled it.

As stated above in Count 3, deliberate indifference to an inmate's serious medical needs can
violate the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*,

- 12 -

511 U.S. 825 (1994); and discussion above.  The Seventh Circuit has recognized that dental care is "one of the most important medical needs of inmates."  *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).  Furthermore, allegations that an inmate denied his dentures could not chew his food, making eating difficult, and that he suffered bleeding, headaches, and disfigurement, state a serious medical need.  *Id.*

Based on these legal standards and Plaintiff's allegations, it is clear that Plaintiff has sufficiently stated facts that could constitute deliberate indifference to his serious dental needs.  As stated in Counts 3 and 5, however, Plaintiff has failed to state a claim because he has not specified by name any defendant personally responsible for denying him dental treatment.  Accordingly, Plaintiff has failed to state a claim against any defendants; Count 6 is **DISMISSED** from the action without prejudice.

**COUNT 7**

Finally, Plaintiff makes the following general complaints about the conditions of confinement at Menard Correctional Center.  Inmates do not receive proper hygiene or cleaning supplies and are not given enough money to purchase them from the commissary.  The cells at Menard contain electrical outlets that are within six feet of water and are not GFCI complaint, causing a risk of electric shock and fire.  Inmates are allowed in the yard only two or three times per week for two to five hours each time, despite the state requirement that inmates receive one hour of recreation every 24 hours.  Inmates do not have adequate opportunities to shave, and they do not receive adequate clothing for cold weather or properly sized shoes.

In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause.  First, an

objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   The second requirement is a subjective element – establishing a defendant's culpable state of mind. *Id.*

Without expressing any opinion as to the legal merit of any of these factual allegations, the Court finds that Plaintiff has failed to state a claim on these facts because Plaintiff has not specified by name any defendant personally responsible for any of these conditions as is required to state a claim under section 1983.  Accordingly, Count 7 is **DISMISSED** from the action without prejudice.

**DISPOSITION**

In summary, Plaintiff may proceed on Count 3 against Defendants Bradley, Waller, McDaniel, Hinsley, Hoffman, and Grubman, and on Count 4 against Defendants Waller, Anderson, Neeper, and Smith.  Because no claims remain against them, Defendants Blagojevich, Walker, Meeks, Ahmed, and the unknown defendants are **DISMISSED** from the action, as are Counts 1, 2, 5, 6, and 7 of the complaint, as specified above.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for ***Defendants Bradley, Waller, McDaniel, Hinsley, Hoffman, Grubman, Anderson, Neeper, and Smith***.  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on ***Defendants Bradley, Waller, McDaniel, Hinsley, Hoffman, Grubman, Anderson, Neeper, and Smith*** in the manner specified by Rule 4(d)(2) of the Federal

- 14 -

Rules of Civil Procedure.  Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from IDOC pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in

accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

### PENDING MOTIONS

Also pending before the Court are Plaintiff's motions to appoint counsel (Doc. 3), for acceptance of a non-conforming complaint (Doc. 4), for orders for service of summons (Docs. 7 and 8), and to disqualify the judge (Doc. 9).

- 16 -

*Appointment of Counsel*

When deciding whether to appoint counsel, the Court must first determine if a *pro se* litigant has made reasonable efforts to secure counsel before resorting to the courts. *Jackson v. County of McLean*, 953 F.2d 1070, 1072 (7th Cir. 1992). Plaintiff makes no showing that he has attempted to retain counsel. Therefore, the Court finds that appointment of counsel is not warranted at this time. Accordingly, Plaintiff's motion for appointment of counsel (Doc. 3) is **DENIED**.

*Acceptance of Non-Conforming Complaint*

Plaintiff asks the Court to accept his *pro se* complaint even though it was not submitted on the Court's forms. The Court finds that Plaintiff's claims are stated clearly and understandably, and that defendants will not have difficulty responding to the complaint. Accordingly, the Court accepts the complaint. Plaintiff's motion (Doc. 4) is **GRANTED**.

*Service of Summons*

Because service has now been ordered as specified above, Plaintiff's two motions for service of summons (Docs. 7 and 8) are **DENIED** as moot.

*Disqualification*

As to Plaintiff's request for disqualification of the undersigned judge in the action, under 28 U.S.C. § 455, recusal is required when a judge or a family member has a stake in a case before him, or when the judge has a conflict of interest or may be biased. In relevant part, the statute provides:

> (a) Any justice, judge, or magistrate of the Untied States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:
> (1)  Where he has a personal bias or prejudice concerning a party, or personal knowledge of the disputed evidentiary facts concerning the proceeding . . . .

- 17 -

28 U.S.C. § 455(a), (b)(2).

> The phrase "personal bias or prejudice" echoes the language of [28 U.S.C.] § 144, and there is authority that the phrase has the same meaning in both statutes. *E.g. United States v. Olander*, 584 F.2d 876, 882 (9th Cir. 1978). We see no reason to doubt this; consequently, we shall view judicial interpretations of "personal bias or prejudice" under § 144 as equally applicable to § 455(b)(1). In particular, we think that the interpretation of "personal" as meaning "extrajudicial" applies equally to § 455(b)(1). *Accord In re International Business Machines Corp.*, 618 F.2d 923, 928 (2[d] Cir. 1980).

*United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985).

> The disqualification of a judge for actual bias or prejudice is a serious matter, and it should be required only when the bias or prejudice is proved by compelling evidence. Accordingly, we think the appropriate standard of proof is the same as for § 144: whether a reasonable person would be convinced that the judge is biased.

*Id. See also O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 987-89 (7th Cir. 2001); *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996) (Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits.); *Lac du Flambeau Indians v. Stop Treaty Abuse-Wis.*, 991 F.2d 1249, 1255 (7th Cir. 1993); *United States v. Hanhardt*, 134 F.Supp.2d 972 , 975 (N.D.Ill. 2001) ("trivial risks of perceived partiality are not enough to mandate recusal").

Plaintiff makes no allegations that the undersigned or any member of his family has a stake in the case, that the undersigned has any other conflict of interest, or that he is biased against the Plaintiff. Plaintiff's only stated ground for disqualification is Plaintiff's perceived delay by the Court in ordering service upon the defendants. This is an insufficient ground for disqualification. Accordingly, the motion (Doc. 9) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** January 5, 2007.


/s/   David   RHerndon
**DISTRICT JUDGE**