IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

**FILED**

JUN 0 8 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

James Owens, K83253, pro se,
        plaintiff,

vs

Rod Blagojevich, et al,
        defendants.

Case No. 06-380-DRH

PLAINTIFFS' ANSWER TO DEFENDANT'S
AFFIRMATIVE DEFENSE

NOW COMES the plaintiff, James Owens, pro se, and hereby answers the defendants affirmative defenses as follows:

I.   It is the contention of the plaintiff that the defendants denied the plaintiff his Eight Amendment right to be free from cruel and unusual punishment, did not follow their own rules and regulations, showed deliberate indifference to the plaintiffs basic needs by acting in an arbitrary and intentional or reckless manner, causing irreparable injury, with no legitimate penological objective nor rationally related to a legitimate government purpose, which inflicted punishment which involved unnecessary and wanton infliction of pain, utilized vindictive enforcement and retaliatory treatment intended to discourage or punish the plaintiff for exercising his constitutionally protected rights of demonstration and redress of grievances, and failed to provide the plaintiff adequate protection and safety when they had actual knowledge, when the plaintiff informed them of specific threats to his safety and made repeated requests for help, of an impending, easily preventable harm and decided to do nothing. The issue of whether a defendant is a-

(1).

ware of facts from which inference could be drawn that a substantial risk of serious harm exists, and whether the defendant drew that inference, or if there is a material dispute as to the facts and circumstances, the defendant knew or should have known, or as to the facts regarding what the defendants or plaintiff actually did, are for a jury to decide, so defendants are not entitled to qualified immunity; and because the qualified immunity defense usually depends on facts of the case, dismissal at the pleading stage is inappropriate and case must go to trial.

2.    It is the contention of the plaintiff that the defendants are not protected by the Eleventh Amendment because absolute immunity afforded state officials, when the State is a real party in interest, under the Eleventh Amendment does not apply if suit challenges constitutionality of defendants actions and sovern immunity has an exception that a suit that enjoins conduct that violates the law or exceeds the authority of public officials is not barred because it is not considered to be an action against the State.

3.   The plaintiff affirms he has exhausted all administrative remedies as to time constraints and content of grievances.

4. I It is the contention of the plaintiff that he alleged, and did, suffer physical injuries in his complaint and that he may recover damages as he suffers psychological injury resulting from malicious or sadistic behavior on the part of the defendants, that the deprivation of a First Amendment right entitles the plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred, pun-

ive damages may be awarded in a §1983 action where the defendants acted with deliberate indifference, reckless disregard for prisoners right to security, or with evil motive or intent, nor is qualified immunity sufficient to protect the defendants against punitive damages for reckless conduct. Furthermore, the plaintiff may obtain injunctive relief to enjoin the continuous disregard for his safety by the defendants.

Respectfully Submitted,

James Owens

James Owens

## VERIFICATION

I, James Owens, the unersigned, certify and state that I am the petitioner in the above matter, I have read the foregoing application and have knowledge of its contents, and under penalty of perjury as provided by law pursuant to section 1-109 of the Code of Civil Procedures, I certify that the statements set forth in the foregoing motion and in this affidavit are true and correct except as to matters therein stated to be on information and belief, and to such matters I believe and certify the same to be true.

Date: 6-5-07

Respectfully Submitted

James Owens

James Owens

K83253

PO Box 1700

Galesburg, IL 61402

(3)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

James Owens, K83253, pro se,
        plaintiff,

vs.                                         Case No. 06-380-DRH

Rod Blagojevich, et al,
        defendants.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' ANSWER TO DEF-
ENDANT'S AFFIRMATIVE DEFENSE.

    Now comes the plaintiff, James Owens, pro se, and in support of
his answer to the defendants affirmative defense offers the following
Memorandum of law:

1. While lawfull imprisonment does deprive convicted prisoners of many
   rights, inmates still retain limited constitutional protection including
First Amendment freedom of free exercise of religion; Fourteenth Amendment
right to access to the courts; to challenge violations of their constitutional
right and this access may niether be denied or obstructed; Williams v Lane, 548
FSupp 927 (NDIL 1982) and due process of law, the touchstone of which is the
protection of the individual against arbitrary action of the government,
Lucas v Taylor, 349 ILL App   '95 (2004) restricted only by the nature of the pen-
al system; and the right to equal protection under the law, Williams v Lane
548 FSupp 927 (NDIL 1982)

2. Any restraint of exercise of basic personal freedoms guaranteed by the First
   Amendment must supply adequate standards of procedural due process to

(1)

ensure available corrective review of decisions to deny or limit such freedoms, such safeguards prevent danger of wrongfull prohibitions and virtual bans on exercise of freedoms, U S V Silberman, 464 F Supp 866 (1979)

3. Prisoners claiming due process violations, under the Fourteenth Amendment, most demonstrate that they have been deprived of a protected liberty or property interest by arbitrary government action and these interests may arise from the Constitution or Administration Regulations, Williams V Lane, id

4. Prisoners should be stripped of only those constitutional rights which would impair prison security or administration, Palmer v Hudson, 697 F 2d 1220 (1983) and liberties guaranteed by the First Amendment, though not absolute, are so fundamental to the freedoms of society that any denial of those liberties is subject to strict scrutiny, Tanner v McCall, 441 F Supp 503 (1977), niether the label which a state places on its own conduct, nor even the legitimacy of its motivations, can avoid the applicability of the federal constitution, Vann v Scott, 467 F 2d 1235 (1972) any law that regulates or infringes upon the exercise of First Amendment rights must survive the most exacting scrutiny, Rosen v Port of Portland, 641 F 2d 1243 (1981) any law which imposes a "prior restraint" on the exercise of First Amendment rights comes to the Court of Appeals with a heavy presumption against its validity, Rosen v Port of Portland, id, any law which regulates or infringes upon the exercise of First Amendment rights is presumptively unconstitutional and the State bears the burden of justification, and must bear a "substantial relation" to a "weighty government interest", the law cannot be justified merely by showing some legitimate government interest, Rosen, id but, rather, interest advanced must be of paramount importance, Paton v LaPrade, 469 F Supp 773 (1978) and State v Today Newspaper, 443 A 2d 787 (2006) the law must be the least restrictive means of protecting the government interest involved, Rosen, id

5. Discipline and administration of state detention facilities are subject to

(2)

federal authority only when paramount federal constitution or statutory rights supervene, but where state regulations applicable to inmates of prison facilities conflicts with such rights, the regulations must be invalidated, People v Mason, 145 Il App 3d 218 (1986) and the DOC Adult division is bound to follow its own regulations, People v McDougle, 236 Ill Dec 896 (1999). The federal district Court, in which federal constitutional challenge to conditions of confinement in state prison is brought, has jurisdiction over claim that state prison official had not complied with state statutory requirements relating to conditions of confinement, Palmigiano v Garrahy, 443 FSupp 956 (1977)

6. Prisoners retain certain constitutional rights including First Amendment freedoms, Kincaid v Rush, 670 F2d 737 (1982) the loss of which for even minimal periods of time constitute irreparable harm, Elrod v Burns, 965 SCt 2673 (1976) denial for even a day inflicts irreparable injury, Int'l Soc. for Krishna Conciousness v Hays, 438 FSupp 1077 (1977) and infringement constitutes irreparable injury per se, Lawrence University Bi-Centennial Commission v City of Appleton, WI, 409 FSupp 1319 (1976). Prisoners retain all First Amendment rights not inconsistent with their status as prisoners or with legitimate penological objectives of the Corrections System, Gregory v Auger, 768 F2d 287, cert denied 106 SCt 601 (1985) although convicted prisoners do not retain full panoply of constitutional rights normally enjoyed by those not convicted or incarcerated, their status as prisoners does not remove them entirely from the purview of the First Amendment, prison inmates retain those First Amendment rights that are not inconsistent with his status as a prisoner, Pittman v Hutto, 594 F2d 407 (1979) while courts do not generally interfere with prison administrative matters in absence of constitutional concerns, Carter v O'Sullivan, 924 FSupp 903 (2011 1996) In cases involving alleged infringement an prisoners constitutional rights, courts must defere to the expertise of prison administraters unless abuse of discretion

(3)

afforded such individual has been demonstrated, Brisbon v Lane, 554 F Supp 426 (1983) administrative convenience is not a constitutional substitute for these rights of individuals, Brennan v Il Racing Board, 42 Il 2d 352 (1969) significant impairment, either direct or indirect of First Amendment rights must survive exacting scutiny, and the mere showing of legitimate government interest is insufficient to justify the infringement, Vincent v Marcus, 447 F Supp 775 (1978) and while courts must defer to the experience of prison officials when determining whether challenged prison regulation is constitutional, that defference is not absolute, and in order to warrant defference, prison officials must present credible evidence to support their penological goals, Beerheide v Suthers, 283 F3d 1179 (2002) to justify abridging or denying First Amendment freedoms government must show not only legitimate government interest but also compelling and overwhelming need to achieve such interest at cost of basic liberty, by means that are the least restrictive ones possible, Tanner v McCall, 441 F Supp 503 (1977) and correctional officials, whos' business it is to maintain order within their institutions, may not restrict the scope of inmates constitutional rights, by making auto routine assertions of necessity for discipline and security in support of restrictive policies, Campbell v Miller, 787 F2d 217, cert den 107 S Ct 673 (1986) without showing a threat to the order and security of their institutions, Adams v Carlson, 488 F2d 619 (1973) First Amendment freedoms are not to be sacrificed in the name of pursuit of legitimate government objectives, instead, if possible, regulations must be sufficiently tailored to achieve their objectives so as to avoid conflict with the First Amendment, ACORN v City of Frontenac, 714 F2d 813 (1983) prison officials must put forward legitimate government interest to justify regulations impinging upon constitutional rights of inmates and must provide evidence that the interest proffered is the reason why regulation is adopted or enforced, Casey v Lewis,

(4)

4F3d 1516 (1993) and cannot rely on general or conclusionary assertions to support their policies infringing upon inmates constitutional rights, but rather, must first identify specific penological interest involved, then must demonstrate both that these specific interests are the actual basis for their policy and that the policy is reasonably related to the furtherance of identified interests, evidenciary showing is required as to each point, <u>Clement v CaDOC</u>, 220 FSupp 2d 1098 (2002)

7. When prison officials, with deliberate indifference, fail to provide for a serious need of prisoners, a violation of the Eighth Amendment occures, <u>Ivan stall v Rowe</u>, 478 FSupp 87 (NDIL 1979) as the Eighth Amendment protects inmates from governmental actors deliberate indifference to his basic needs, under this standard conduct is "deliberatly indifferent" when the official has acted in an intentionally or criminally reckless manner; ie; the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occuring even though he could have easily done so, <u>Beard v Farnham</u>, 394 F3d 469 (7th Cir.II 2005) For tort law purposes, "recklessness" is defined as disregarding substantial risk of danger that is either known or would be apparent to a reasonable person, <u>Rutledge v Springborn</u>, 836 FSupp 531 (NDIL 1993) in determining whether prison official had knowledge of the potential harm to inmate, for purpose of meeting deliberate indifference requirement under the Eighth amendment, the Court of Appeals considers whether the circumstances suggest that the defendant official being sued has been exposed to information concerning the risk and thus must have known about it, <u>Delaney v Detella</u>, 256 F3d 679 (7th Cir.II 2001) claimant need not show that a prison official acted, or failed to act, believing that harm actually would befall an inmate to show deliberate indifference, it is enough that the official acted, or failed to act, despite his knowledge of a substantial risk of serious harm, <u>Delaney, id</u>

(5)

8. To state a claim for an Eight amendment violation for prison officials failure to protect prisoners from other prisoners, prisoner need not allege that prison officials attacked him directly, but, rather must show that official intentionally failed to protect him from other prisoners, and deliberate indifference is enough to create an inference of such intent, Rutledge v Springborn, 836 FSupp 531 (NDIL 1993) and the failure of prison officials to establish procedures for screening files of inmates assigned to investigative status area to ensure some level of compatability with cellmates support conclusion that officials exhibited deliberate indifference to prisoners right to security and constituted punishment within the meaning of the Eighth Amendment, Walsh v Mellas, 837 F2d 789 (7th Cir II 1988)

9. Prisoners retain the Eight Amendment right to be free from cruel and unusual punishment, Farmer v Brennan, 511 US 825 (1994) which prohibits penalties that transgress todays broad and idealistic concept of dignity, civilized standard of humanity and decency, Campbell v Cauthron, 623 F2d 503 (1980) which are grossly disproportionate to the severity of the crime, punishments which are incompatible with evolving standards of decency that mark progress of a maturing society or which involve unnecessary or wanton infliction of pain, Estelle v Gamble, 429 US 97 (1976) whether imposed without or within prison walls, Adams v Carlson, 488 F2d 619 (1973) and Haynes v Lambon, 785 FSupp 754 (NDIL 1992)

10. Convicted prisoners right to be free from cruel and unusual punishment is violated when jailers refuse to investigate prisoners cries for help, fail to establish adequate patrol procedures or are indifferent to complaints with substance and known problems, Matzker v Herr, 748 F2d (7th Cir IL 1984)

11. True "selective enforcement" is a concious exercise of some selectivity in enforcement of law as purpose of discrimination intended to accomplish some forbidden aim. "Vindictive enforcement" is selective enforcement intended to discourage or punish the exercise of a constitutional right, especially the

(6)

right to criticise the government. To state a claim for vindictive enforcement, plaintiff must show: 1) exercise of a protected right; 2) prosecutors "stake" in exercising that right; 3) reasonableness of prosecutors conduct and presumably; 4) that prosecution was initiated with intent to punish plaintiff for exercise of protected right, Heaton v City of Princeton, 47 F Supp 841 (1997)

12. The government may not penalize individuals for exercising constitutional rights, Black v Village of Park Forrest, 20 F Supp 2d 1218 (NDIL 1998) such as demand for due process procedures be provided, Townsend v Vallas, 99 F Supp 2d 902 (affirmed in part 256 F3d 661 (NDIL 2000) as the constitution prohibits state from punishing inmates by depriving them of their basic needs, and particular measure amounts to punishment when there is a showing of explicit intent punish on the part of the defendant facility officials when the restriction or condition is not rationally related to a legitimate government purpose or when the restriction is excessive in light of that purpose, Anton v Sherriff of DuPage Co, 47 F Supp 2d 993 (NDIL 1999) nor may prison officials hinder prisoners from access to or retaliate against prisoners who attempt to exercise their constitutional rights, Williams v Lane, 851 F2d 867 (7th Cir. IL 1988) seek or obtain access to the courts, whether the retaliation takes the form of withholding property or priviledges, DeTomaso v McGinnis, 976 F2d 211 (IL 1992) as retaliation for exercising constitutionally protected rights is, in itself, a violation of constitutional rights, and retaliation need not be physical in nature, or rise to level of substantive due process violation, Walker v Page, 66 Fed Appx 52 (7th Cir. IL 2003) conduct that does not violate federal constitution can form basis for prisoners retaliatory claim, if that conduct is done with improper, retaliatory motive, Hoskins v Lenear, 395 F3d 372 (IL 2005) government actions which, standing alone, do not violate the federal constitution may nevertheless be constitutional torts if motivated in sub-

stantial part by a desire to punish an individual for exercising a constitutional right, <u>Thaddeus-X v Blatter</u>, 175 F 3d 378 (1999) and is actionable under civil rights statute even if the retaliatory acts, if taken for a different reason, would have been proper, <u>Hadley v Peters</u>, 841 F Supp 856 (CDIL 1994) or if it is capable of deterring a person of ordinary firmness from exercising his right to access to the courts, <u>Thaddeus-X v Blatter, id</u>

13. To state a claim for retaliation prisoner need not allege violation of a separate and distinct constitutional right, <u>Thomas v Evans</u>, 880 F 2d 1235 (1989) otherwise permissible conduct can become impermissible when done for retaliatory reasons and civil rights complaint states a claim for retaliation when it sets forth a chronology of events from which retaliation may plausibly be inferred, <u>Zimmerman v Tribble</u>, 226 F 3d 568 (2000) may assert injury no more tangible than a chilling effect on First Amendment right, <u>Gomez v Vernon</u>, 255 F 3d 1118 (2001) or against an official who retaliates against him for exercising his right to seek judicial relief, <u>Matzker v Herr</u>, 748 F 2d 1142 (1L 1984)

14. To prevail on a claim for retaliation, in violation of his constitutional right, a plaintiff must prove that: 1) he engaged in a protected right; 2) the state actors retaliated against him; 3) the protected activity caused the state actors retaliation and 4) more than a theoretical injury occured, <u>Robbins v Bureau of Land Management</u>, 252 F Supp 2 d 1286 (2003) and circumstantial evidence, like timing of events or the disparate treatment of similarly situated individuals, is appropriate evidence to establish motive for purpose of retaliatory claim, <u>Thaddeus-X v Blatter, id.</u> and where government officials retaliatory actions are traceable to custom or policy, it is unnecessary to demonstrate that decision-making official directly ordered each act carried out under his edict in order to hold official liable in his official capacity

Gomez v Vernon, 255 F3d 1118 (2001)

15. The First Amendment prohibits state officials from denying prisoners their right to access to the courts, Thomas v Evans, 880 F2d 1235 (1989) and under the Fourteenth Amendment prisoners have due process rights to access to the courts to challenge violation of their constitutional rights, Bound v Smith, 430 US 817 (1977) and to give them reasonably adequate opportunities to present their claims, and such access must be adequate, effective and meaningfull, Zimmerman v Tribble, 226 F3d 568 (7th Cir II 2000) and this access may be niether denied or obstructed, Williams v Lane, 851 F2d 867 (7th Ci, IL 1988) as such right is as fundamental as any other he may hold, Adams v Carlson, 488 F2d 619 (1973)

16. Indigent inmates have a constitutional right of access to the courts founder the due process clause, which right is necessary since an indigent is limited in seeking legal redress in courts by condition of his confinement, Doherty v Caisley, 83 III Dec 361 (1984) and as all other rights of a prison inmate are illusionary without the right of unfettered access to the courts, being entirely dependent for their existence on the whim or caprice of the prison warden, Adams v Carlson, 488 F2d 615 (1973) that right extends to direct appeals, habeus corpus applications and civil rights claims, Thaddeus-X v Blatter, 175 F3d 378 (1997) so a prison inmate must have access to legal materials particularly where he is unable to retain council and must petition the courts pro se, Adams v Carlson, id.

17. Prison officials must be sensitive and alert to protections afforded prisoners by developing judicial scrutiny of prison conditions or practices, Knell v Bensinger, 522 F2d 720 (7th Ci, IL 1975) The Constitution imposes on officials the duty to protect those in their charge from harm from other prisoners because the officials have taken away virtually all of prisoners ability to protect himself, Mayoral v Sheahan, 245 F3d 934 (II 2001) and because the Court of Claims has

(9)

previously held that the State owes a duty to inmates to provide them safe conditions to perform their assigned work and because the Illinois Appellate Court has recognised the duty of a county and a village to provide reasonable care for a prisoners health, it is apparent that the State owes a duty to provide prisoners with a safe place to live, Holt v State, 431 C. Ct Cl 195 (1990) thus when state actors deprive a person of his ability to care for himself by incarcerating or detaining him, it assumes an obligation to provide some minimal level of well being and safety, Rapier v Kankakee Coll, 203 F 2d 978 (CDIL 2002) to protect inmates from unwarranted physical injury by another inmate, Freeman v Godinez, 996 F Supp 822 (NDIL 1998) Prison officials have a duty to take reasonable steps to insure safety of inmates including harm done by one inmate to another, Pope v Shafer, 86 F 3d 90 (1996) and may be held liable under the Eighth Amendment for deliberate indifference to their duty to protect inmates from assault by fellow inmates, Tauffer v Thompson, 662 F Supp 945 (NDIL 1985) as failure to protect prisoner on even a single occasion can give rise to §1983 liability founded on Eighth Amendment violation where it can be inferred that an institutional employer should have realized that there was a strong likelihood of attack, Watts v Laurent, 774 F 2d 168 (7th Cir Il 1985)

18) In order to violate the Eighth Amendment, conditions of confinement must be denial of basic human needs or minimal civilized measures of lifes necessities, and infliction must be deliberate or otherwise reckless, in criminal law sense, such that defendants act is so dangerous that his or her knowledge of risk can be inferred or that the defendant actually knew of impending, easily preventable harm, Antonelli v Sheahan, 81 F 3d 1422 (7th Cir Il 1996)

19. Prison officials are not liable under the Eight Amendment for protection against prisoner assaults unless they realize that a prisoner is in im-

(10)

minent danger of attack and decided to do nothing, <u>Campbell v. Greer</u>, 831 F2d 700 (7th Cir. 1987) liability of prison officials for deliberate indifference t=inmate safety does not depend upon whether the risk comes from multiple sources or one source, or whether the inmate is at risk for reasons personal to him or because all inmates face the risk, <u>Mayoral v. Sheahan</u>, 245 F3d 934 (7th Cir. IL 2001) Prisoner normally prove actual knowlege of impending harm by showing that he complained to prison officials about a specific threat to his safety, mere negligence, eg, if prison guard should have known of risk, but does not, is not enough to state a claim of deliberate indifference, and it is also not sufficient to show that prison guard merely failed to act reasonably, <u>Pope v. Shafer</u>, ~ 86 F3d 90 (7th Cir. IL 1996) in circumstances where an injury is caused by something under the management of the State, and the injury is such that it wouldnot have happened in the ordinary course of events if the State had exercised proper care, the injury itself affords reasonable evidence that it was due to the States' failure to exercise due care, <u>Wassinger v. State</u>, 41 ILCtCl 68 (1988)

20. Prisoner may bring action for failure to protect, under the Eighth Amendment if he establishes that he was incarcerated under conditions posing a substantial objective risk of serious harm and that prison officials were deliberatly indifferent to his health or safety, <u>Bullock v. Barnham</u>, 23 F Supp 2d 883 (ND IL 1998) or when inmates repeated requests for help placed appropriate prison officials on notice of life threatning situation constitutional duty of care arises, binding such officials to take reasonable measures to insure inmates safety, <u>West v. Rowe</u>, 448 F Supp 58 (ND IL 1998) so when the record establishes the claimant had asked to be placed in P.C. and the prison officials were informed of the claimants concern of a possible attack, and yet they failed to take reasonable precautions,

(11)

and failed to comply with their own regulations concerning such situations, and claimant was not guilty of any contributory negligence, an award may be granted, _Petrusak v State_, 39 ILCtCl 113 (1987)

21. A constitutional duty is placed on prison officials to maintain the well-being of inmates, _Tunstall v Rowe_, 478 F Supp 87 (ND IL 1979) and extends to those needs which prisoners are unable to provide because of their confinement, _Tunstall, id_ so prison officials must insure that inmates receive adequate food, shelter, clothing, protection and medical care, _Oliver v Dean_, 77 F3d 156 (IL 1996) even though the Constitution does not require that prisoners be comfortably, prison conditions do violate the Eight Amendment where they deprive inmates of the minimum civilized measures of lifes necessities, _Delaney v Detella_, 256 F3d 679 (7th Cir IL 2001) Prison walls cannot seperate inmates from constitutional rights, _Harris v Thispen_, 941 F2d 1495 (1991) convicted prisoners do not forfiet Constitutional protections by reason of conviction and confinement in prison, _Fortner v Thomas_, 983 F2d 1024 (1993) and retain protections afforded by the First Amendment, _Mckinney v Maynard_, 952 F2d 350 (1991), such as picketing and demonstration, _Cispes v FBI_, 770 F2d 468 (1985) a persons interest in personal autonomy and self-determination is a fundamentally commanding one, with well established legal and phylosophical underpinnings, _Thor v Superior Court of Solono Co_, 855 F2d 375 (1993) and although the DOC's interest in preserving life, preventing suicide and maintaining orderly and disciplined institutions outweigh hunger-striking inmates constitutional right to privacy, and thus the department could force-feed inmate, only where inmates stated purpose was to attempt to manipulate the system and gain the attention of prison officials with hope of making his confinement easier, _People v Millard_, 270 ILL Dec 407 (IL App 4 Dist 2003)

(12)

the State has no right to force-feed him to prevent his death from starvation if that is his wish. It has no right to destroy a persons will by frustrating his attempt to die, if necessary, to make a point, <u>Zant v Prevatte</u>, 248 Ga 832.

22. The Constitution of the United States states Congress shall make no laws prohibitting the free exercise thereof to petition the government for redress of grievances, <u>Hudson v Palmer</u>, 468 US 517 (1984) as that right is among the most precious of liberties, safeguarded by the Bill of Rights, and shares the preffered place accorded to the First Amendment freedoms and has sanctity and sanction not permitted dubious intrusions, <u>Stern v US Gypsum</u>, 547 F2d 1329 (1977). 735 ILCS 5/3-8-8 (d) states a committed person shall be informed of the grievance process and they will be available to all committed persons and <u>735 ILCS 5/3-8-8(a)</u> demands a committed persons right to file grievances shall not be restricted. so filing of grievances by prisoners is constitutionally protected because prisoners have limited access to the courts, and that right extends to establishd prison grievance procedures, <u>Hancock v Thalacker</u>, 933 F Supp 1449 (1996) prisoners are entitled to utilize available grievance procedures without recriminations, <u>Hoskin v Lenear</u>, 395 F3d 372 (IL 2005) to submit written and oral complaints about prison conditions, <u>Feder v Godinez</u>, 875 F Supp 1334 (IL 1995) when right to petition for redress of grievance is in question their is a heightening of requirement to show false or frivolous complaints in order to prevent a chill on filing meritorious claims, <u>Hancock v Thalacker, id</u> and interference with prisoners "kite", which was routine means of direct communication with prison warden, would constitute chilling of prisoners right to petion for redress of grievances, <u>Hancock v Thalacker, id,</u> therefore it is apparrent department employees refusal to address grievances, refusal to accept and process the issues in inmates grievances and the ARB's refusal to accept grievances directly from inmates when

(13)

institutions don't address them also constitute a chilling effect on prisoners right to petition for redress of grievances. When a plaintiff alleged that the defendants did not comply with the prisons grievance procedure, in that they failed to respond to his grievances, the court held that prison officials had a duty to address grievances and the plaintiff had a right to have the officials perform according with institutional rules, specifically Title 20 Sec. 504.830(a), West v Gramley, et al, Slip Op No 4-93-0424 (Il App 4 Dist) and it is irrelevant, to the applicability of the right to petition the government for redress of grievances, that its exercise might have the effect of causing professional injury to official about whom the complaint is made, Stern v US Gypsum, 547 F2d 132d (1997)

23. Under the doctrine of qualified immunity government officials, who perform discretionary functions, are generally protected from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, Sallie v Brooks, 343 F3d 868 (2003). The Court of Appeals reviews a trial courts defendant claims of qualified immunity de novo, and undertakes a two part analysis: asking 1) whether the facts alleged, taken in light most favorable to the party asserting the injury, showed the officers conduct violated a constitutional right and 2) whether the right was clearly established at the time of it's alleged violation, Board v Farnham, 394 F3d 469 (7th Cir 11 2005). So a qualified immunity defense fails if unlawfullness is apparent in light of preexisting law, Walsh v Mellas, 837 F2d 789 (7th Cir 1988) and officials who engage in massive, systemic deprivation of prisoners constitutional rights are entitled to, and can expect, no defference from the federal Courts, Palmigiane v Garrahy, 443 F Supp 956 (1977)

24. Qualified immunity is a purely legal question to be determined

(14)

prior to trial, and a plaintiff bears the burden of proving that a clearly established right existed at the time a defendants action took place, Sallier v Brooks, 343 F3d 868 (2003) and must allege personal involvement or knowledge on part of defendants to state a claim for monetary damages against supervisory personell, Williams v Franzen, 499 FSupp 304 (NDIL 1980) as there is no respondeat superior liability under 42 USCA § 1983, supervisors need not have actual knowledge of specific incident at issue if they had power and duty to alleviate conditions which led to violation of constitutional rights, Miranda v Munoz, 770 F2d 255 (1985) so a claim under the Eight Amendment may be based on a deprivation that occures at the direction of a prison warden, or official with his knowledge or consent, Riggins v Walter, 279 F3d 422 (9thCir1l 2001) Correctional Administrators are not immune from liability for damages if they knew or reasonable should have known that action taken would violate the constitutional rights of a prisoner or if they acted with malicious intent to cause deprivation of the constitutional right or injury. Ignorance of settled principles of law does not justify denial of constitutional rights, Knell v Bensinger, 522 F2d 720 (7thCir1l 1975) Supervisors can incur liability, under civil rights statutes concerning deprivation of rights, for their personal involvement in constitutional violations or when their corrective inaction amounts to deliberate indifference to, or tactic authorization of, the violative practices, Hancock v Thalaker, 933 FSupp 1449 (1996) and satisfies the personal responsibility requirement of §1983 if he acts, or fails to act, with a deliberate or reckless disregard of plaintiffs constitutional rights, or if the conduct causing the constitutional deprivation occures at his direction or with his knowledge and consent, Smith v Rowe, 761 F2d 360 (1985) 42 USCA §1983 contains no state-of-mind requirement independant of that necessary to

(15)

state violation of the underlying constitutional right, <u>Farmer v Brennan</u>, 511 US 825 (1994) the inquiry as to whether government official is entitled to qualified immunity focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the official in question, <u>Delaney v Detella</u>, 256 F3d 679 (7th Cir 11 2001) so the official can't escape liability for deliberate indifference to inmates safety by showing that he didn't know that a particular inmate was especially likely to be assaulted by specific prisoner who eventually committed the assault. Liability of prison officials for deliberate indifference to an inmates safety doesn't depend upon whether risk comes from multiple sources or from one source, or whether inmate is at risk for reasons personal or because all inmates face the risk, <u>Mayoral v Sheahan</u>, 245 F3d 934 (2001) if prison official has strong reason to believe that one inmate is about to attack another and fails to take any precautions to safeguard intended victim, he may be held liable under deliberate indifference standards for injury sustained by prisoner who was assaulted, <u>Hanna v Lane</u>, 610 F Supp 32 (ND Ill 1983) and standards apply to complaints presented to responsible government officials about conduct of their subordinates with whom complaintee has had official dealing and it matters not that subject of grievance may not be political in sense of raising public issues, <u>Stern v US Gypsum</u>, 547 F2d 1329 (1977) it is not necessary for the particular violation in question to have been previously held unconstitutional or unlawful, instead, a clearly established constitutional right exists in the absence of a precident, where the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right, <u>Board v Farnham</u>, 354 F3d 469 (7th Cir 11 2005) for 1983 purposes, physicians are persons acting under color of law when the state employees them to treat prisoners, <u>Tillery v Owens</u>, 719 F Supp 1256 (1989)

(16)

25. Prison officials have the burden of proof of satisfying affirmative defense of immunity, Williams v Lane, 851 F2d 867 (IL 1982) that a reasonable official could have believed, in light of settled law, that he was not violating a constitutional or statutory right, Collins v Jordan, 110 F3d 1363 (1996) and the issue of whether a prison official is aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and whether official drew that inference is for a jury to decide, Riccardo v Rausch, 359 F3d 510 (7th Cir IL 2004) if there is a material dispute as to the facts and circumstances that officer knew, or should have known, or as to facts regarding what the officer or plaintiff actually did, the officer is not entitled to qualified immunity, and the case must procede to trial, Collins v Jordan, id, because a qualified immunity defense usually depends on facts of the case dismissal at the pleading stage is inappropriate, Ben v Aguinaldo, 256 F Supp 926 (ND IL 2003)

26.  It is the contention of the plaintiff that the defendants denied him his Eighth Amendment right to be free from cruel and unusual punishment, did not follow their own rules and regulations, showed deliberate indifference to the plaintiffs basic needs; by acting in an arbitrary and intentional or reckless manner, causing irreparable injury, with no legitimate penological objective nor rationally related to a legitimate government purpose, which inflicted punishment involving unnecessary and wanton infliction of pain, utilized vindictive enforcement and retaliatory treatment intended to discourage or punish the plaintiff for exercising his constitutionally protected rights of peacefull demonstration and redress of grievances, and failed to provide the plaintiff adequate protection and safety when they had actual knowledge; when the plaintiff informed them of specific threats to his safety and made repeated requests for help; of an impending, easily preventable harm, and decided to do nothing. The is-

(17)

sue of whether the defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and whether the defendants drew that inference, or if there is a material dispute as to the facts regarding what the defendants or plaintiffs actuall did, are for a jury to decide; so defendants are not entitled to qualified immunity, because the qualified immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate and the case must go to trial.

27. It is the plaintiffs contention that the defendants are not protected from liability by the Eleventh Amendment in that:

28. Absolute immunity afforded state officials, when the State is a real party in an interest under the Eleventh Amendment does not apply if a suit challenges constitutionality of officials actions, <u>Williams v Lane</u>, 548 FSupp 927 (NDIL 1982) and sovern immunity prohibits a court from entering mandatory injunctions directing the State to take specific actions; but has an exception: a suit to enjoin conduct that violates the law, or exceeds the authority of a public official is not barred by sovern immunity because it is not considered to be an action against the State, <u>Hadley v IDOC</u>, 298 IllDec 635 (IL App 4 Dist 2005).

29. Administrative rules have the force of law, Hadley. id, courts defference to administrative expertise and discretionary authority of correctional officials must be schooled, not absolute, <u>Williams v Lane</u>, 548 FSupp 927 (NDIL 1982) and, in proper cases, when deprivation of constitutional dimentions are involved, <u>Preston v Thompson</u>, 589 F2d 30 (7thCir IL 1978) where constitutional deprivations are established, either in specific instances or by the totality of conditions within a penal institution, the federal court may, and must, if the issue is appropriately presented, intervene, <u>Smith v Sullivan</u>, 611 F2d 1039 (1980) and where prison rules or regulations impede exercise of constitutional rights,

(18)

federal courts must discharge the duty to protect these rights, <u>Asker v Co DOC</u>, 224 F Supp 2d 1253, affirmed 350 F3d 917 (2002) and must compel state officials or employees to perform their official duties in compliance with constitutional requirements, <u>Preston v Thompson</u>, 589 F 2d 30 (7th Cir IL 1978) and have the general authority to compel the DOC to follow it's own regulations, <u>People v McDougle</u>, 236 Ill Dec 896 (1999).

30.  Injunctive relief will be granted against public officials, with respect to their official acts; when those acts are arbitrary and capricious; when he abuses his discretion; if fraud, corruption or gross injustice is shown to underlie his discretionary action, <u>Local 1894, AFSCME v Holsapple</u>, 147 Ill Dec 404 (1990) The irreparable injury required for injunctive relief need not be very great; irreparable harm, as required for an award of injunctive relief, does not mean injury that is beyond compensation in damages, but rather, denotes transgressions of a continuing nature, ie; a continuing violation of the U.S. Constitution, that cannot be adequately compensated with money, is a per se irreparable harm, for injunctive purposes and where a violation is continuous in nature, the fact that only nominal damages could be recovered in an action at law often provides the very best reason why a court of equity should be involved, <u>Lucas v Peters</u>, 251 Ill Dec 719 (2000); indeed, injunctive relief is well suited to small injuries that are of such constant and frequent recurrence that no fair or reasonable redress can be had therefor in a court of law, <u>Hadley v IDOC</u>, 298 Ill Dec 635 (Il App 4 Dist 2005) and while federal courts may not award monetary damages when awards will be paid out of State treasury, it may impose declaratory, or injunctive relief, and courts may exercise its equitable jurisdiction even if it's remedies implicate state funds, <u>Tillery v Owens</u>, 719 F Supp 1256 (1989)

31.  Plaintiff reaffirms he has exhausted all administrative remedies and

(19)

states as follows:

32.   Prisoners must follow state rules about time and content of grievances in order to meet administrative exhaustion requirement under the PLRA, <u>Riccardo v Rausch</u>, 359 F3d 510 (7th Cir II 2004) grievances by inmates must contain the sort of information that the administrative system requires, and it is up to the administrators to determine what is necessary to handle grievances effectively; the only constraint is that no prison system may establish requirements inconsistent with the federal policy, when an administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought, therefore, as in a national pleading system, the grievance need not lay out the facts, articulate legal theories, specify each remedy later sought in litigation, <u>Strong v David</u>, 297 F3d 646 (II 2002) or demand particular relief, all the grievance must do is object intelligently to some asserted shottcomming, <u>Strong</u>, id.

33.   In determinning whether inmate has exhausted his administrative remedies, for purposes of PLRA, the court looks to the inmates grievance, not to other information compiled in other investigations, when a prisoner presents his grievance through one complete round of prison grievance process, or when time limits for prisoners response set forth in prison grievance process has expired, <u>Tilman v Prater</u>, 292 F Supp 2d 898, affirmed 368 F3d 1521 (2003) regardless of whether he complied with the grievance systems procedural requirements, and exhaustion is not precluded on grounds that prison officials refused to hear the grievance as untimely filed inasmuch as inmate gave state officials the opportunity to address his complaint which is all that is required, <u>Themes v Woolum</u> 337 F3d 720 (2003) nor are prisoners required to exhaust administrative remedies

(20)

before suing under §1983 on claims that prison officials showed deliberate indifference to his physical condition following two assaults, under exeption to exhaustion requirement applicable when damage has been done and administrative action could provide no remedy, Ford v Page, 169 F Supp 2d 831 (NOIl 2001)

34.    It is the further contention of the plaintiff that he may seek damages for mental or emotional pain without physical injury, even though he has described specific injury in his complaint, in that:

35.    Prisoners may recieve damages if he suffered physical injury from failure to protect or if he suffers psychological injury resulting from malicious or sadistic behavior, that, in the majority view, always offends concious standards of decency, Bullock v Barnham, 25 F Supp 2d 883 (NOIl 1998)

36.    The deprivation of First Amendment rights entitles plaintiff judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred, Conell v Lightner, 143 F3d 1216 (1998)

37.    Punative damages may be awarded in an §1983 action where prison officials acted with deliberate indifference, or reckless disregard for prisoners right to security, and therefore violated the Eight Amendment rights of prisoner, Woodward v Corr. Med. Serv. of Il, Inc, 368 F3d 1917 (7th Cir. 2004) as well as when defendant acts with evil motives or intent. Policy of qualified immunity is not sufficient to protect defendants against punative damages for reckless conduct. With such immunity defendant is only protected from liability of mere negligence, because of the need to protect hisuse of discretion in his day-to-day decisions in the running of a correctional facility, Smith v Wade, 461 US 30 (1983)

38.    Prisoners may obtain injunctive relief to enjoin the continuous disregard for his safety by prison officials, Bullock, id.

(21)

Respectfully Submitted,

James Owens

James Owens

## VERIFICATION

I, James Owens, the undersigned, certify and state that I am the petitioner in the above matter, I have read the foregoing application and have knowledge of its contents, and under penalty of perjury, as provided by law pursuant to section 1-109 of the Code of Civil Procedures, I certify that the statements set forth in the foregoing motion, and in this affidavit, are true and correct, except as to matters therein stated to be on information and belief, and to such matters I believe and certify the same to be true.

Date:   6-5-07

Respectfully Submitted,

James Owens

James Owens

#K83253

PO Box 1700

Galesburg, IL 61402

(22)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

James Owens, #K83253, pro se,
    plaintiff,
      vs                 Case No. 06-380-DRH
Rod Blagojevich, et al
    defendants.

PROOF OF SERVICE

TO:
Ellen C. Bruce            Clerk of the Court
Asst. Attny. Gen.       U.S. Dist. Court for Southern Illinois
500 South Second St.    PO Box 249
Springfield, IL 62706    East St. Louis, IL 62202

   PLEASE TAKE NOTICE that on 6-5-07, I have placed the documents listed below in the institutional mail at Hill Correctional Center, properly addressed to the parties listed above, for mailing through the U.S. Postal Service, with an attached, signed money voucher for postage:
Plaintiff's answer and memorandum of law in support to defendants affirmative defense

Date: 6-05-07

                    James Owens
                    James Owens
                    #K83253
                    PO BOX 1700
                    Galesburg, IL 61402